Argued and submitted November 1, 1995, reversed February 7, 1996

## STATE OF OREGON,
*Respondent,*

*v.*

## FRED EUGENE MOORE,
*Appellant.*

## (9012415CR; CA A86288)

910 P2d 1163

Robert J. McCrea argued the cause and filed the briefs for appellant.

Douglas F. Zier, Assistant Attorney General, argued the cause for respondent. With him on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Before Riggs, Presiding Judge, and Landau and Leeson, Judges.

RIGGS, P. J.

## RIGGS, P. J.

Defendant appeals his conviction for conspiracy to deliver a controlled substance. He argues that, under the facts alleged in the indictment, he is not guilty of a crime. ORS 475.992; ORS 161.450. Although defendant assigns error to the trial court's denial of his motion for a judgment of acquittal, we treat his motion as one in arrest of judgment. *State v. Wolfs*, 312 Or 646, 826 P2d 623 (1992); *State v. McKenzie*, 307 Or 554, 771 P2d 264 (1989).[1] We reverse.

In June 1990, two undercover informants, Calvin and Susan Elliot (the Elliots), contacted defendant several times to discuss whether he was interested in buying some marijuana. The Elliots told defendant that they worked for an organization that was selling large quantities of marijuana throughout eastern Washington, eastern Oregon and northern Nevada. On June 20, Calvin spoke with defendant and quoted prices for one, five and ten pound quantities of marijuana. Defendant expressed an interest in buying one pound of marijuana and told the Elliots that in the future, when he sold some real property, he would eventually "like to buy ten [pounds] at a time." The next relevant contact between the Elliots and defendant occurred on August 29, 1990.[2] The parties discussed prices and dates on which delivery could take place. Defendant inquired about a price break if he purchased two pounds of marijuana, but a firm price for that quantity was never established between the parties. Nevertheless, defendant later confirmed, "I want at least one [pound], I can guarantee that, and I'd like to get two [pounds,] but we'll see how it works out. I'm getting a bunch of * * * cash about the first of December, and then maybe I can go for ten [pounds] or something like that." The Elliots told defendant that they would deliver one pound of marijuana to him in five days and, together, the parties developed a telephone code message so that defendant could increase his order to two pounds if he wanted.

---

[1] Because defendant did not demur to the indictment, a motion in arrest of judgment was the proper form in which to allege that the indictment fails to allege a crime. ORS 136.500; ORS 135.630(4).

[2] The Elliots apparently spoke to defendant on July 9, 1990, but the tape recording of their conversation was unintelligible.

The planned delivery to defendant never took place, because the police detective who was overseeing the sting operation was called away to work on a murder investigation and, as the detective testified, the undercover operation "went to pieces." In fact, the Elliots did not contact defendant again until December 1990, at which time defendant expressed no interest in purchasing marijuana or other controlled substances. Defendant was subsequently charged by indictment with conspiracy to deliver a controlled substance. The court, sitting without a jury, convicted defendant and sentenced him to 24 months probation.

On appeal, defendant argues that the indictment fails to allege that he conspired to deliver a controlled substance. The indictment reads, in part:

> "The said Defendant, on or about the 29th day of August, 1990, in the said County of Grant and the State of Oregon, did unlawfully, with the intent that conduct constituting the crime of Delivery of a Controlled Substance, punishable as a felony be performed, agree with Calvin Elliot and Susan Thompson Elliot to engage in the performance of the following conduct to-wit: *to unlawfully and knowingly, for consideration have the said Calvin Elliot and Susan Thompson Elliot purchase and deliver marijuana * * *.*" (Emphasis supplied.)

Defendant contends that the indictment alleges only that he conspired to have *the Elliots* deliver a controlled substance and that, even if the state proved that allegation, he is not guilty of a crime, because the delivery statute, ORS 475.992, applies only to the transferor of controlled substances, not to the recipient.[3] *See State v. Fredrickson*, 92 Or App 223, 757 P2d 1366 (1988) (delivery statute not applicable to a defendant who does not transfer or attempt to transfer controlled

---

[3] We have held that in instances where an individual obtains large amounts of a controlled substance or substances, he or she may be found guilty of delivery, because possession of amounts inconsistent with personal use constitutes a "substantial step" towards commission of the crime of delivery of a controlled substance. *See* ORS 475.005(8) (defining "delivery" to include attempted transfers); *State v. Fulmer*, 105 Or App 334, 804 P2d 515 (1991); *State v. Aguilar*, 96 Or App 506, 773 P2d 17, *rev den* 308 Or 315 (1989). Those cases *do not control* the outcome of this case, because the indictments in those cases properly alleged that *the defendant* delivered controlled substances and the issue was whether the evidence adduced at trial was sufficient to permit an inference that the defendant in each case had attempted to deliver controlled substances. Here, the indictment alleges that defendant agreed to have *the Elliots* purchase and deliver marijuana.

substance); *State v. Deptuch*, 95 Or App 54, 767 P2d 471, *adhered to* 96 Or App 228, 772 P2d 442 (1989) (court erred in instructing jury that delivery statute applies to both transferor and recipient).

Relying on our opinion in *State v. Bryant*, 94 Or App 236, 764 P2d 970 (1988), the state contends that the indictment is worded broadly enough to include an allegation that defendant conspired to deliver marijuana to third parties. In *Bryant*, the defendant was charged with and convicted of conspiracy to deliver a controlled substance after he arranged to purchase a large amount of heroin from an undercover police officer. On appeal, he argued that the indictment alleged only that he conspired to purchase heroin from the named officer, not that he conspired to deliver heroin to third parties. The indictment at issue in that case alleged:

> "[Defendant] did unlawfully, with the intent that the crime of Delivery of a Controlled Substance punishable as a felony be performed, agree with Anne Sundstrom to engage in and cause the performance of the following conduct, to wit: to unlawfully and knowingly deliver a controlled substance in Schedule I, to wit: heroin * * *."

We held that the indictment was "worded broadly enough to encompass the state's theory that defendant conspired to buy heroin wholesale in order to sell it to his retail customers." 94 Or App at 239. We cannot similarly construe the indictment in this case. Its wording specifically limits the conspiratorial objective to having the Elliots, not defendant, deliver a controlled substance. The indictment cannot be fairly read to include an allegation that defendant conspired to deliver a controlled substance to third parties.

Because of our disposition, we need not reach defendant's remaining assignment of error.

Reversed.